

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MICHAEL STEVEN FRANKS, | § | No. 08-23-00161-CR |
| Appellant, | § | Appeal from the |
| v. | § | 109th Judicial District Court |
| THE STATE OF TEXAS, | § | of Winkler County, Texas |
| Appellee. | § | (TC# DC22-6079) |

## <u>MEMORANDUM OPINION</u>

A jury acquitted Appellant Michael Steven Franks of the offense of continuous sexual abuse of a child but found him guilty of the lesser-included offense of aggravated sexual assault of a child. He was sentenced to 25 years in prison. On appeal, Appellant contends: (1) the trial court erred in granting the State's request for an instruction on the lesser-included offense of aggravated sexual assault; (2) the trial court erred in refusing to suppress a statement Appellant made to law enforcement, which he claims was coerced; and (3) the evidence was insufficient to support a finding that he committed the sexual assault after he turned 17. For the reasons set forth below, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant was indicted on November 2, 2022, for the offense of continuous sexual assault of a child, alleging that he engaged in four acts of sexual abuse with L.S.,[1] a child under the age of 14, beginning on or about March 1, 2016, and continuing until on or about July 25, 2016.[2] The indictment alleged that the first three acts occurred on or about March 1, 2016, and consisted of the following allegations: (1) Appellant penetrated L.S.'s sexual organ with his sexual organ; (2) Appellant penetrated L.S.'s sexual organ with his fingers; and (3) Appellant caused L.S. to touch his sexual organ with her fingers. The fourth alleged act—that Appellant penetrated L.S.'s sexual organ with his sexual organ—was alleged to have occurred on or about July 25, 2016.

## A. The child-complainant's trial testimony

L.S., who was born in June 2007 and 15 years old at the time of trial, testified to the following. She lived in a house in Kermit, Texas until she was nine years old. During that time, Appellant, who was considered a close family friend, lived next door.[3] When she was four years old, Appellant, who was approximately eight years older than her, began sexually abusing her.

L.S. described at least five different incidents in which Appellant abused her. The first incident was in her mother's bedroom while she was watching cartoons—Appellant began touching her "privates" with his hands. A second incident occurred when she was playing video games with Appellant in a trailer that was parked in his family's back yard—he "grabbed [her] hand and put [her] hand down his pants and used [her] for his sexual pleasure." A third incident occurred at Appellant's living room while the two were watching television together on the

---

[1] To protect the victim's identity, we refer to her by L.S. in place of her true name. *See* Tex. R. App. P. 9.10.

[2] Appellant turned 17 on February 1, 2016.

[3] At trial, L.S.'s mother confirmed that Appellant lived next door with his family and she considered him a close family friend; he was like a "son" to her.

couch—Appellant "stuck his tongue into [her] privates for his sexual pleasure" but stopped when "he heard his mom come in the door." A fourth incident occurred in Appellant's living room while the two were watching television together on a couch or loveseat—Appellant "penetrated [her] onto the couch, and he was holding [her] down; and his sexual organ was inside of [hers]." A fifth incident occurred while L.S. was watching television in her brother's bedroom—Appellant entered the room and "stuck his sexual organ inside of [hers], and he basically used [her] for his sexual pleasure."

L.S. was unable to remember exactly when the incidents occurred, given how young she was at the time. L.S. was also inconsistent regarding when the abuse stopped, which became a critical point at trial, as Appellant did not turn 17 until February 2016 and was therefore not considered an adult for criminal law purposes until that time.[4]

Initially, L.S., who turned nine in June 2016, testified that the abuse continued until she was "at least nine." She further testified that the abuse occurred up until she moved to Roswell, New Mexico, in the summer of 2016, which was a "couple of weeks" after her ninth birthday and shortly after she completed third grade.[5] However, on cross-examination, she testified that the two incidents at "Michael's house in the living room, one involving the couch and one involving the love seat," both happened when she was younger than seven.[6] On redirect, L.S. testified that she could not recall "anything happening" when she was eight years old. In addition, when asked about

---

[4] A "child" for criminal law purposes is one who is between ten years of age or older and under 17 and is subject to the jurisdiction of the juvenile court unless the child is certified to stand trial as an adult. *See* Tex. Fam. Code Ann. § 51.02(2) (defining a "child" for criminal law purposes as a person between ten years of age or older and under 17 years of age). A trial court may certify a person who has turned 18 but is accused of committing a felony offense prior to turning 17 to stand trial as an adult in an appropriate district court. Tex. Fam. Code Ann. § 54.02(j). But here, the parties agree Appellant was not certified to stand trial as an adult for any conduct that occurred before he turned 17.

[5] L.S.'s mother confirmed that the move occurred a "couple of weeks" after L.S.'s birthday.

[6] L.S. was not asked when the incident in her brother's bedroom occurred.

the "year 2016 when you were in third grade," L.S. responded that she did not recall any incidents of abuse occurring when she was in third grade.

## B. The outcry statement

L.S. did not report the abuse until 2021, when her parents temporarily placed her in a mental health facility after she began engaging in self-harm at age 13. In the facility, she made an outcry that Appellant had sexually abused her from the age of four to 11. At trial, the outcry witness testified that L.S. described the "last" incident of abuse as having occurred when she was 11 years of age in Appellant's living room "right before she moved to New Mexico." The witness recalled that L.S. was crying when she spoke about the incident, and it was therefore difficult to get details from her about it. However, she recalled L.S. telling her that Appellant's "privates went inside her privates and that they were hurting her privates." She further recalled that L.S. said Appellant had "repeatedly" abused her, describing other incidents in which Appellant touched her or forced her to touch him.

At trial, L.S. recalled informing the outcry witness of the abuse but did not recall the specifics of what she reported. L.S. did explain, however, that she was not in her "right state of mind" at the time of the outcry, so she may have been inaccurate about her age at the time of the last incident of abuse.

## C. The polygraph exam and Appellant's confession to prior incidents of abuse

After L.S. made her outcry, her parents notified law enforcement in Kermit, Texas, about her allegations, and Appellant was brought in for questioning. A Texas Department of Public Safety (DPS) special agent interviewed Appellant in April 2021, and after advising Appellant of his Miranda rights, Appellant (who was 22 years of age at the time) initially denied he had engaged in any sexual abuse. The agent thereafter polygraphed Appellant and informed him the results indicated he had engaged in acts of sexual abuse with L.S. Appellant then confessed to two

4

occasions on which he had sexually abused L.S. when she was seven years old. First, he admitted to touching L.S.'s vagina with his hands. Second, he admitted to pressing his penis against her vagina over her clothes for three to four minutes. The agent recalled Appellant saying he was sorry for those incidents, and she gave him the opportunity to write L.S. a letter with the hope it could help L.S. begin to heal. In his handwritten letter, which trails off at the end, Appellant stated: "I am sorry for what I did to you and I am sorry for what[.]"

### D. Appellant's motion to suppress

Shortly before trial, Appellant filed a written motion to suppress the statements he made to the DPS agent, claiming they were made in violation of his constitutional rights. The trial court did not rule on the matter prior to trial. During trial, Appellant renewed his motion. In a supporting bench brief, Appellant argued, *inter alia*, that his statements were coerced, as they were made after the DPS agent conducted a polygraph examination and informed him that the "results of his examination indicated that he was being deceptive[.]" After hearing the testimony of the DPS agent regarding her interview with Appellant, the trial court denied the motion. The court then allowed her to testify about Appellant's post-polygraph statements and allowed the State to introduce in evidence the handwritten apology letter Appellant wrote to L.S. However, the DPS agent was precluded from referring to the results of the polygraph examination during her testimony.

### E. Appellant's motion for a directed verdict

Following the State's case, Appellant moved for a directed verdict, contending the State failed to establish that he committed any acts of sexual abuse after his 17th birthday (in February 2016). In particular, Appellant argued L.S. testified that he did not commit any acts of abuse in 2016, or when L.S. was eight years old, thereby establishing that the abuse all occurred before he turned 17. The State countered that although L.S. had some "issue with dates and her ages" when

the alleged abuse occurred, there was nevertheless sufficient evidence from which the jury could infer that the conduct occurred after Appellant's 17th birthday. The trial court denied the motion.

## F. The lesser-included-offense instruction

The State thereafter asked the trial court to issue an instruction on the lesser-included offense of aggravated sexual assault of a child. Appellant objected, averring that "all of the testimony about any lesser included offense is stuff that happened when [he] would have been a juvenile." The State again countered that there was testimony from which the jury could infer that at least one act of penetration occurred in the summer of 2016 shortly before L.S. moved to New Mexico, which would have allowed the jury to infer that it occurred after Appellant turned 17. The trial court stated it had the same recollection and overruled Appellant's objection. It provided the jury with an instruction that it could find Appellant guilty of the lesser-included offense of aggravated sexual assault of a child if it found beyond a reasonable doubt that on or about March 1, 2016, Appellant penetrated the sexual organ of L.S. with his sexual organ. However, as discussed in more detail below, in a separate portion of the jury charge, the trial court informed the jury that the lesser-included offense chosen by the State was the "incident described by testimony as occurring just before [L.S.] moved to Roswell, New Mexico."

## G. The jury's deliberations and verdict

During closing arguments, defense counsel argued that there was insufficient evidence to establish that Appellant was 17 at the time any of the alleged conduct occurred, pointing out that L.S. testified at various times that no abuse occurred in 2016. The jury acquitted Appellant of continuous sexual abuse of a child, but it found him guilty of the "lesser-included offense of aggravated sexual assault of a child" and sentenced him to 25 years in prison. This appeal followed. We start by analyzing the sufficiency of the evidence.

6

## SUFFICIENCY OF THE EVIDENCE

In his third issue on appeal, Appellant contends there was legally insufficient evidence to support his conviction for aggravated assault of a child. Appellant does not dispute that he engaged in an act of penetration as alleged by the State; instead, pointing to L.S.'s vague and contradictory testimony regarding when any such act occurred, he argues the evidence was insufficient to establish beyond a reasonable doubt that he engaged in any such act after he turned 17. We agree with the State, however, that it was up to the jury to resolve any inconsistencies in the evidence, and that L.S.'s testimony, together with the outcry witness's testimony, was sufficient to support the jury's verdict.

### A. Standard of review

Under the Due Process Clause of the United States Constitution, the State is required to prove every element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In reviewing the sufficiency of the evidence to support a conviction, we apply the legal sufficiency standard as articulated by the U.S. Supreme Court in *Jackson v. State. See Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010); *see also Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Under that standard, we view the evidence "in the light most favorable to the verdict" and recognize that because the jury is the "sole judge of the witnesses' credibility and the weight to be given their testimony," we must defer to the jury's credibility and weight determinations. *Brooks*, 323 S.W.3d at 899–900 (citing *Jackson*, 443 U.S. at 319). We therefore may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact-finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *see also Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014) (holding that a reviewing court should not act as a "thirteenth juror" by overturning a jury's credibility and weight determinations).

In addition, it is firmly within the jury's province to resolve conflicts in testimony, and we must therefore presume the jury resolved any conflicting inferences in favor of the verdict. *Dobbs*, 434 S.W.3d at 170 (citing *Jackson*, 443 U.S. at 319). "This standard gives full play to the responsibility of the factfinder 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018) (quoting *Jackson*, 443 U.S. at 319). A jury's verdict will therefore be upheld if any rational juror could have found the essential elements of the offense beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).

**B. Analysis**

A person commits the offense of aggravated sexual assault of a child if the person "intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by any means[.]" Tex. Penal Code Ann. § 22.021(B)(i). In general, a child victim's testimony, standing alone, is sufficient to support a conviction for aggravated sexual assault. *See Bruton v. State*, No. 08-11-00316-CR, 2013 WL 4029272, at *4 (Tex. App.—El Paso Aug. 7, 2013) (not designated for publication), *aff'd*, 428 S.W.3d 865 (Tex. Crim. App. 2014) (citing Tex. Code Crim. Proc. Ann. art. 38.07); *see also IslasMartinez v. State*, 452 S.W.3d 874, 880 (Tex. App.—Dallas 2014, pet. ref'd) (child victim's testimony sufficient to support conviction for aggravated sexual assault). Similarly, "a child complainant's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault." *Tavarez v. State*, No. 08-22-00119-CR, 2023 WL 3853322, at *4 (Tex. App.—El Paso June 6, 2023, no pet.) (citing *Rodriguez v. State*, 819 S.W.2d 871, 873–74 (Tex. Crim. App. 1991) (en banc) (holding that testimony of an outcry witness need not be corroborated or "substantiated" by the victim's testimony or by other testimonial evidence)); *see also Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005) (recognizing that a child's outcry statement regarding an offense is "substantive evidence of the crime"). Here, we find that

the combined force of L.S.'s and the outcry witness's testimony was sufficient to establish that Appellant committed an act of penetration after his 17th birthday.

L.S. testified at trial that Appellant engaged in two acts of penetration as defined by the Penal Code—one when they were in Appellant's living room and the other in her brother's bedroom. But, as Appellant points out, L.S. was less than clear regarding when the two incidents occurred, and she testified at times that she did not recall any incidents of abuse occurring when she was in third grade in 2016 or when she was eight years old. Appellant further points out that L.S. did not turn nine until June 2016, which he contends conclusively established that no acts of abuse occurred after he turned 17.

However, L.S. testified at least twice at trial that Appellant continued to abuse her after she turned nine in June 2016 and that he did so until shortly before her family moved to Roswell in the summer of 2016 after her ninth birthday, which placed the abuse in the relevant time period. As we have previously recognized, "[c]ourts give wide latitude to the testimony given by child victims of sexual abuse," and children are not expected to testify with the "same clarity and ability as is expected of mature and capable adults." *Cortez v. State*, No. 08-11-00158-CR, 2013 WL 1682618, at *2 (Tex. App.—El Paso Apr. 17, 2013, pet. ref'd) (not designated for publication) (citing *Newby v. State*, 252 S.W.3d 431, 436 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc)). Thus, to the extent L.S. expressed confusion regarding the abuse timeline, this did not render her testimony implausible or incredible. Instead, it was up to the jury to resolve any inconsistencies in her testimony in determining when the abuse occurred. *See Gonzalez v. State*, No. 08-02-00537-CR, 2004 WL 1770611, at *4 (Tex. App.—El Paso Aug. 5, 2004, no pet.) (not designated for publication) (recognizing that it was up to the jury to resolve inconsistencies in testimony of child-victim of sexual abuse regarding the timeframe in which the abuse occurred); *Spitzer v. State*, No. 08-22-

9

00059-CR, 2023 WL 2733363, at *8 (Tex. App.—El Paso Mar. 30, 2023, pet. denied) (mem. op., not designated for publication) (recognizing that inconsistencies in child-complainant's testimony regarding nature and timing of abuse did not undermine the court's confidence in the jury's verdict).

In addition, the outcry witness's testimony would have allowed the jury to infer that at least one act of penetration occurred after Appellant's 17th birthday, despite any inconsistencies in L.S.'s testimony. *See Saldana v. State*, 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi 2008, pet. ref'd) (finding outcry witness's testimony sufficient to sustain appellant's conviction of aggravated sexual assault despite victim's inconsistent testimony). She testified that L.S. described an incident in which Appellant penetrated her sexual organ with his while the two were in Appellant's mother's living room, and stated the incident occurred "right before she moved to New Mexico," which, as set forth above, occurred in July 2016. And although L.S. told the outcry witness she was 11 years old at the last incident of abuse, when in fact she would have been eight or nine at the time, L.S. explained at trial that she was not thinking clearly regarding her age at the time she made her outcry. The jury was therefore free to resolve this inconsistency in L.S.'s outcry statement in favor of finding that this last act of abuse occurred after Appellant turned 17.

Accordingly, we conclude that there was legally sufficient evidence to support Appellant's conviction. Appellant's third issue is overruled.

## THE LESSER-INCLUDED-OFFENSE INSTRUCTION

In his first issue on appeal, Appellant contends the trial court erred in granting the State's request for a lesser-included-offense instruction on the charge of aggravated sexual assault of a child. Although Appellant appears to acknowledge that aggravated sexual assault of a child can, under certain circumstances, be a lesser-included offense of continuous sexual assault of a child, for which he was indicted, he nevertheless takes issue with the portion of the trial court's

10

instruction in which it described the lesser-included offense as the "incident described by testimony as occurring just before [L.S.] moved to Roswell, New Mexico." Appellant contends the instruction was improper because it contained "additional descriptive averments" that were not found in the indictment. As explained below, we conclude that the trial court properly granted the State's request for a lesser-included-offense instruction. Further, Appellant is estopped from asserting that the trial court's instruction describing the offense was erroneous, as his defense attorney expressly agreed to the language about which he is now complaining.

## A. Applicable law

Whether the State is entitled to a lesser-included-offense instruction depends on whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Grey v. State*, 298 S.W.3d 644, 645 (Tex. Crim. App. 2009). "An offense is a lesser-included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011) (citing *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007)). Under Penal Code § 21.02(b), a charge of continuous sexual abuse of a child is based on the allegation that the defendant committed two or more acts of sexual abuse during a period of more than 30 days when the victim was a child younger than 14 years of age. Tex. Penal Code Ann. § 21.02(b). And § 21.02(c) lists the various acts of sexual abuse that may be alleged in accusing a defendant of continuous sexual abuse, to include, *inter alia*, aggravated sexual assault as defined in § 22.021, which makes it an offense to "intentionally or knowingly . . . cause the penetration of the sexual organ of another person by any means without that person's consent[.]" *Id.* § 21.02(c); § 22.021(a)(1). Thus, the Court of Criminal Appeals has held that when a continuous-sexual-abuse indictment alleges a specific offense that is listed under subsection (c), such an offense will *always*

11

be considered a lesser-included offense under the above analysis. *Soliz v. State*, 353 S.W.3d 850, 854 (Tex. Crim. App. 2011).

## B. Analysis

At the State's request, the trial court instructed the jury on the lesser-included offense of aggravated sexual assault, but it did so in two separate portions of the jury charge. The first portion was based on the first offense listed in the indictment in which the State alleged that Appellant penetrated L.S.'s sexual organ with his sexual organ on or about March 1, 2016. This portion of the instruction, which came under the heading "lesser included offense," read:

> The state accuses the defendant of having committed the lesser-included offense of aggravated sexual assault of a child. Specifically, the accusation is that the defendant, on or about March 1, 2016, did then and there cause his sexual organ to penetrate the sexual organ of [L.S.] who was then and there a child under the age of 14 years.[7]

Appellant does not appear to challenge this portion of the trial court's charge and appears to concede that, standing alone, this would have been a proper instruction, as the allegations set forth in the lesser-included-offense instruction corresponded to the allegations set forth in the first offense listed in the continuous-sexual-abuse count of the indictment.

However, Appellant takes issue with a second portion of the charge in which the court instructed the jury, under the heading "State's Election of a Particular Incident," as follows:

> The state has offered evidence of more than one incident to prove the lesser-included offense aggravated sexual assault of a child. The state is required to choose one of those incidents for you to consider in deciding whether it has met its burden of proof on that particular occasion. *The incident that the state has chosen is the last incident described by testimony as occurring just before [L.S.] moved to Roswell, New Mexico.* This is the only incident for which the defendant may be found guilty only of the lesser-included offense of aggravated sexual assault of a child. You are to confine your deliberations to deciding whether the defendant is guilty or not guilty of aggravated sexual assault of a child on that particular

---

[7] The instruction then provided a definition of the elements of aggravated sexual assault of a child to include the requirement that the State prove beyond a reasonable doubt that Appellant "intentionally or knowingly caused the penetration of the sexual organ of another person by any means," and that the "other person was at the time a child younger than fourteen years of age."

12

occasion. You cannot find the defendant guilty of aggravated sexual assault of a child based on an occurrence at any other time or place other than the incident that the state has chosen (emphasis added).

Appellant contends the trial court erred in including the italicized language describing the alleged lesser-included offense as the "last incident described by testimony as occurring just before [L.S.] moved to Roswell, New Mexico." In particular, he asserts that the indictment did not include any such language in describing either of the two acts of penetration that the State listed in the continuous-sexual-abuse indictment, and therefore the jury instruction improperly included "additional descriptive averments not present in the indictment."

The State counters that Appellant is misusing the term "descriptive averments," pointing out that the Court of Criminal Appeals has used that term to distinguish the statutory elements of an offense from the factual allegations (the averments) in an indictment, i.e., those allegations that describe the "manner and means" by which a defendant has committed the offense. *See State v. Meru*, 414 S.W.3d 159, 164 (Tex. Crim. App. 2013) (distinguishing the statutory elements of an offense from the "descriptive averments" in an indictment which alleged the manner and means by which the defendant committed a particular offense). The State argues that the lesser-included-offense instruction alleged the same manner and means of committing the sexual assault as alleged in the indictment, i.e., that Appellant used his sexual organ to penetrate L.S.'s sexual organ. It does not, however, appear that Appellant is using the term "descriptive averments" in such a narrow fashion, and is instead complaining more generally that the instruction simply contained averments, or allegations, that were not contained in the indictment when it described the offense as occurring "just before [L.S.] moved to Roswell, New Mexico."[8]

---

[8] The term "averment," is defined as follows: "In pleading. A positive statement of facts, in opposition to argument or inference. 1 Chit. Pl. 320. In old pleading. An offer to prove a plea, or pleading. The concluding part of a plea, replication, or other pleading, containing new affirmative matter, by which the party offers or declares himself 'ready to verify.'" *Averment*, BLACK'S LAW DICTIONARY (https://thelawdictionary.org/?s=averment).

Although we do not condone the language in the instruction referencing the testimony,[9] which does include language not in the indictment, Appellant not only failed to object to that language in the trial court, but he expressly agreed to including that language. During the charge conference, defense counsel asserted that the original proposed language indicated the State had chosen the lesser-included offense L.S. described in her testimony as occurring before she moved to New Mexico. Defense counsel explained that the State asked to remove the reference to L.S.'s testimony from the instruction, and defense counsel therefore removed it. Defense counsel then informed the court that the revised instruction read as follows: "The incident the State has chosen is the last incident described by testimony as occurring just before [L.S.] moved to Roswell, New Mexico." And defense counsel expressly stated: "I agree to that change."

In a similar situation, the Court of Criminal Appeals recently held that a defendant may be estopped from complaining about an instruction on appeal if doing so is "inconsistent with [his] prior conduct" at trial. *See Ruffins v. State*, 666 S.W.3d 636, 642 (Tex. Crim. App. 2023) (citing *Arroyo v. State*, 117 S.W.3d 795, 798 (Tex. Crim. App. 2003)). In *Ruffins*, the defendant's attorney asked the trial court to instruct the jury on a particular issue, and the court held that "once [defense counsel] stated 'I'm good' with the instruction," he was "estopped from thereafter claiming that the instruction was improper." *Id.* at 643.

Accordingly, as the court did in *Ruffins*, we conclude that because Appellant's attorney expressly agreed to the language in the jury instruction he now contends was improper, Appellant is estopped from complaining about it on appeal. Appellant's first issue is overruled.

---

[9] The Code of Criminal Procedure provides that a trial court's instructions may not express an opinion as to the weight of the evidence or "draw the jury's attention to particular facts"—the intent is to "prevent a jury from interpreting a judge's comments as a judicial endorsement or imprimatur for a particular outcome." *See Beltran De La Torre v. State*, 583 S.W.3d 613, 619–23 (Tex. Crim. App. 2019) (citing Tex. Code Crim. Proc. Ann. art. 36.14); *see also Bartlett v. State*, 270 S.W.3d 147, 151–52 (Tex. Crim. App. 2008) ("Even a seemingly neutral instruction may constitute an impermissible comment on the weight of the evidence" if it "singles out that particular piece of evidence for special attention.").

## THE MOTION TO SUPPRESS

In his second issue on appeal, Appellant contends the trial court erred in denying his motion to suppress his statements to the DPS agent during his April 2021 interview in which he confessed to two incidents of sexual abuse that occurred before he turned 17. Appellant complains, *inter alia*, that he made these statements immediately after the DPS agent told him his polygraph revealed he engaged in acts of sexual abuse with L.S., but she failed to inform him that the polygraph results were not admissible in evidence. Appellant argues the statements were coerced in violation of his constitutional rights, contending the agent improperly used the inadmissible results as "leverage" to obtain his confession. We agree with the State that the record does not support that Appellant's confession was coerced under these circumstances.

### A. Standard of review and applicable law

We review suppression rulings under a bifurcated standard. *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). When there are findings of fact, we afford them "almost total deference if they are reasonably supported by the record." *Id.* When there are no findings, "we assume that the court made implicit findings that support its ruling, provided that those implied findings are supported by the record." *Ex Parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). We review questions of law and the application of the law to the facts de novo. *Sims*, 569 S.W.3d at 640.

A confession is coerced in violation of a defendant's constitutional right to due process "if the suspect's 'will has been overborne and his capacity for self-determination critically impaired.'" *Sandoval v. State*, 665 S.W.3d 496, 523 (Tex. Crim. App. 2022), *cert. denied*, 144 S. Ct. 1166 (2024) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)). We consider various factors in making this determination, including "the youth of the accused, his lack of education or his low intelligence, the lack of any advice about constitutional rights, the length of detention, the

15

repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *Id.* (citing *Bustamonte*, 412 U.S. at 225). But even when such factors are present, the "essential element of any due-process involuntariness claim is law-enforcement overreaching." *Id.* (citing *Colorado v. Connelly*, 479 U.S. 157, 163–64 (1986)).

### B. Analysis

In his briefing, Appellant cites to his young age, the length of the detention (three hours), and the investigator's post-polygraph techniques in arguing his confession was coerced. These factors do not warrant a finding of coercion.

Appellant asserts he was "barely past his eighteenth birthday" at the time of the interview, and that his confession pertained to events that occurred while he was still a juvenile. According to the record, Appellant was 22 years of age at the time of his April 2021 interview. Appellant has cited no authority that would suggest we should consider a 22-year-old's age as a factor in determining whether his confession was voluntary. To the contrary, courts have found that much younger defendants were able to provide voluntary statements in response to police questioning. *See, e.g.*, *Green v. State*, 934 S.W.2d 92, 100 (Tex. Crim. App. 1996) (finding confession made by 18-year-old was voluntary); *Martinez v. State*, 131 S.W.3d 22, 35 (Tex. App.—San Antonio 2003, no pet.) (finding 15-year-old defendant's confession in response to police questioning was voluntary under circumstances).

Moreover, there is nothing in the record to suggest that Appellant was not informed of his constitutional rights prior to the interview, that he was of low intelligence, that he was deprived of food or sleep, or that the interview was unduly lengthy in nature. To the contrary, the DPS agent who conducted Appellant's polygraph examination testified that she informed Appellant of his Miranda rights prior to conducting the interview; that he appeared to understand his rights; that Appellant did not request an attorney or ask for the interview to stop; that Appellant was offered

16

water during the interview; and that he was not denied the opportunity to eat or rest. She further testified that the polygraph examination took 90 minutes, and Appellant confessed to the two incidents in question within five minutes after she informed him of the polygraph results indicating he had sexual contact with L.S.

Appellant further complains about the length of the interrogation, which he contends was approximately three hours. But he cites no authority to support the position that a three-hour interrogation is unduly coercive, nor do we find this amount of time to be unduly lengthy under these circumstances. *See Sandoval*, 665 S.W.3d at 524 (finding that a series of interviews lasting 2 hours and 25 minutes was not unduly lengthy in determining voluntariness of defendant's confession).

Finally, Appellant argues his confession was not voluntary because the DPS agent engaged in inherently coercive or overreaching tactics by informing him of his polygraph results without divulging that the results were inadmissible. The DPS agent confirmed that she did not tell Appellant the polygraph results were inadmissible. But Appellant did not argue in the trial court that this failure rendered his post-polygraph confession involuntary. Instead, Appellant argued that simply being told that his polygraph results were "deceptive" constituted an "inherently coercive" police tactic.

While the results of a polygraph examination are not admissible at trial, the use of polygraphs as a means of interrogation does not violate an accused's constitutional rights or render a subsequent confession involuntary.[10] *See Hazlett v. State*, No. 05-16-00495-CR, 2018 WL 1373949, at *2 (Tex. App.—Dallas Mar. 19, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Fernandez v. State*, 353 S.W.2d 434, 437 (Tex. Crim App. 1962); *Webb v.*

---

[10] *See generally Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012) ("For more than sixty years, we have not once wavered from the proposition that the results of polygraph examinations are inadmissible over proper objection because the tests are unreliable.").

*State*, 291 S.W.2d 331, 334 (Tex. Crim. App. 1956) (holding that the use of a polygraph as a means of interrogation does not violate an accused's constitutional rights or "render the confession thereafter made involuntary")). Thus, courts have found that it is not inherently coercive for the police to inform the defendant that his polygraph results indicated deception (even if they did not), and to then use the results as leverage to urge the defendant to confess. *See Nenno v. State*, 970 S.W.2d 549, 558 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999) (en banc) (police were entitled to use results of polygraph examination "as leverage" to urge the appellant to tell the police what happened to his victim, and his subsequent confession was not rendered involuntary as a result); *see also Hazlett*, 2018 WL 1373949, at *2 (recognizing that "the mere fact that a defendant is told he failed a polygraph does not render a resulting statement involuntary") (citing *Gomes v. State*, 9 S.W.3d 373, 378–79 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (finding a defendant's will was not overborne when the police told her the polygraph results showed she lied when, in fact, they did not)).

While conceding that a polygraph examination may be used as part of a police interrogation, Appellant contends, for the first time on appeal, that we should conclude—as a matter of "first impression"—that the police must inform a defendant that his polygraph results cannot be used in court, and the failure to do so constitutes a deceptive police tactic that caused his post-polygraph confession to be coerced. Because Appellant did not make that argument before the trial court, he did not preserve the issue for our review.[11] *See* Tex. R. App. P. 33.1(a)(1) (to

---

[11] But even if we were to consider Appellant's argument, we would conclude that the DPS agent's failure to disclose this information would, at most, be a misrepresentation about the strength of the State's case. And, as the Court of Criminal Appeals has recognized, of the "numerous types of police deception," a misrepresentation regarding the strength of the State's case is "the least likely to render a confession involuntary," as it interferes "little, if at all, with a defendant's free and deliberate choice of whether to confess." *Green v. State*, 934 S.W.2d 92, 100 (Tex. Crim. App. 1996) (citing *Holland v. McGinnis*, 963 F.2d 1044, 1051 (7th Cir. 1992)); *see also Maynes v. State*, No. 08-16-00024-CR, 2018 WL 1082245, at *6 (Tex. App.—El Paso Feb. 28, 2018, no pet.) (not designated for publication) (recognizing same).

preserve a complaint for appeal, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion, and the trial court must have ruled, either expressly or implicitly, on the request, objection, or motion).

Ultimately, the key question in determining whether a confession was rendered involuntary is whether the police conduct at issue was of such a nature "as to overbear the will of the accused and bring about a confession not freely determined." *See Green*, 934 S.W.2d at 99 (citing *Rogers v. Richmond*, 365 U.S. 534, 544 (1961)). Here, none of what Appellant complains about constitutes the type of conduct that would have interfered with Appellant's free and deliberate choice to confess to the prior incidents of abuse involving L.S.

Accordingly, we conclude that the trial court did not err in denying Appellant's motion to suppress Appellant's statements. Appellant's second issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


LISA J. SOTO, Justice

June 17, 2024

Before Alley, C.J., Soto, J., and Salas Mendoza, Judge
Salas Mendoza, Judge, (sitting by assignment)

(Do Not Publish)

19